United States District Court
Southern District of Texas
**ENTERED**
June 09, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 7:19-cv-00234 |
| § | |
| 30.00 ACRES OF LAND, MORE OR § | |
| LESS, and VERONICA MENDOZA, § | |
| § | |
| Defendants. § | |

## **OPINION AND ORDER**

The Court now considers the briefs for just compensation filed by Plaintiff[1] and Defendant Veronica Mendoza,[2] pursuant to Court order,[3] together with the United States' "Opposed Motion for Leave to File a Reply to Defendant's Brief for Just and Adequate Compensation,"[4] and Defendant's "Response in Opposition."[5] After considering the motion, record, and relevant authorities, the Court holds that $100 is just compensation in this case.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a land condemnation case commenced under the Declaration of Taking Act[6] concerning Tract RGV-MCS-1112 as described in the United States' Schedule C, approximately 30 acres of land in Hidalgo County, Texas (the "Subject Property").[7] Plaintiff United States initiated this case on July 12, 2019, with a "Complaint in Condemnation,"[8] declaration of

---

[1] Dkt. No. 26.
[2] Dkt. No. 27.
[3] Dkt. No. 23.
[4] Dkt. No. 28.
[5] Dkt. No. 29.
[6] *See* 40 U.S.C. §§ 3111–18.
[7] Dkt. No. 1-1 at 6.
[8] Dkt. No. 1.

taking,[9] and notice of condemnation.[10] The United States represents that Defendant Veronica Mendoza is the only person with a "claim or interest" in the Subject Property.[11] The United States seeks in this case a:

> temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule C to survey, make borings, and conduct other investigatory work for the purposes described in Schedule B and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.[12]

The United States intends to use the easement "to conduct surveying, testing, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas."[13] The United States deposited $100.00 in estimated just compensation for the taking.[14] This Court granted the United States access to the Subject Property subject to certain conditions on February 5, 2020.[15] At the parties' February 25, 2020, status conference, the parties agreed that the Court will decide the issue of just compensation in this case on the basis of the briefs and evidence submitted.[16] The issue of just compensation is now ripe for decision.

---

[9] Dkt. No. 2.
[10] Dkt. No. 3.
[11] Dkt. No. 1-1 at 14; *see* FED. R. CIV. P. 71.1(c).
[12] Dkt. No. 1-1 at 10.
[13] *Id.* at 4.
[14] Dkt. No. 7.
[15] Dkt. No. 21.
[16] Minute Entry (Feb. 25, 2020); *see* Dkt. No. 27 at 3, ¶ 8 (Defendant "consented to have the Court determine the amount of just compensation on submissions").

## II. MOTION TO FILE REPLY

Before the Court can address just compensation, the Court must ascertain what briefs are being considered. Although both parties filed their briefs for just compensation on the same day,[17] only the United States filed a motion for leave to reply to Defendant's brief on just compensation.[18] Plaintiff United States requests leave "to address the legal insufficiencies and lack of appraisal standards and supporting evidence as asserted by Defendant in her Brief."[19] Defendant "firmly opposes Plaintiff's unjustified Motion for Leave"[20] and argues that the United States seeks a second bite at the apple to make arguments that could have been made in the United States' original brief.[21]

In this Court's typical motion practice, parties who are opposed to a motion are entitled to file a response to the movant's motion, and the movant is then entitled to file a reply to the nonmovant's response within certain time limits.[22] Plaintiff United States invokes this practice and the Court's Local Rule and "asks the Court to consider the Reply to Defendant's Brief the same as it would for motion practice."[23] However, neither the parties' status conference nor any of the orders following the conference contemplated response or reply briefs.[24] Although Defendant characterizes the Court's order as calling for "simultaneous briefing [that] had the effect of avoiding precisely the sequential back-and-forth that Plaintiff now attempts to create,"[25] the Court's order merely directed the parties "to file their respective briefs and evidence

---

[17] Dkt. Nos. 26–27.
[18] *See* Dkt. No. 28.
[19] Dkt. No. 28 at 1, ¶ 2.
[20] Dkt. No. 29 at 1, ¶ 1.
[21] *Id.* at 2, ¶¶ 5–7.
[22] *See* LR7.4.
[23] Dkt. No. 28 at 1, ¶ 3.
[24] *See* Minute Entry (Feb. 25, 2020); Dkt. Nos. 23, 25.
[25] Dkt. No. 29 at 2, ¶ 6.

submittals regarding just compensation in this case" by a deadline[26] that the Court later extended.[27] The Court's order is simply silent on the issue of follow-up briefing. Although Defendant cites to a Western District of Washington case in which the district court in a land condemnation case "intentionally requested that the parties submit their briefing simultaneously," and therefore held "that the Government is not entitled to additional argument," that case is not entitled to any weight,[28] and arises in a different context, after a jury trial, than is present in this case.[29] Whether to grant the United States' request to file a reply appears to be submitted to the absolute discretion of this Court.

However, the Court need not decide this issue. On the basis of only the parties' respective just compensation briefs,[30] the Court agrees with the United States and finds that $100 is just compensation as set forth below. It is not necessary to consider the United States' proposed reply brief.[31] Accordingly, the Court **DENIES AS MOOT** the United States' motion for leave to reply.[32]

### III. JUST COMPENSATION

The Court now turns to the issue of just compensation.[33] The United States argues that its estimated just compensation, $100, is appropriate nominal compensation for the taking granted in this case.[34] Defendant argues that she is entitled to $2,500 in just compensation.[35]

---

[26] Dkt. No. 23.
[27] Dkt. No. 25.
[28] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation omitted) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").
[29] *Fisher v. United States*, No. C09-5146BHS, 2010 WL 4286224, at *1 (W.D. Wash. Oct. 26, 2010).
[30] Dkt. Nos. 26–27.
[31] *See* Dkt. No. 28-1.
[32] Dkt. No. 28.
[33] *See* Dkt. Nos. 26–27.
[34] *See* Dkt. No. 26 at 10.
[35] Dkt. No. 27 at 7, ¶ 20.

### a. Legal Standard

Under the Fifth Amendment to the United States Constitution, private property shall not be taken "for public use, without just compensation."[36] "Just compensation . . . means in most cases the fair market value of the property on the date it is appropriated."[37] "[T]he underlying principle is that the dispossessed owner 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'"[38] "Under this standard [of fair market value], the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking."[39] "[I]n general, comparable sales constitute the best evidence of market value . . . the more comparable a sale is, the more probative it will be of the fair market value of the condemned property."[40] Evidence of fair market value can come from evidence of comparable sales and from expert testimony as to the value of the subject property.[41] "In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is adaptable and needed."[42] "Ordinarily, the highest and best use for property sought to be condemned is the use to which it is subjected at the time of the taking. This is true because economic demands normally result in an owner's putting his land to the most advantageous

---

[36] U.S. CONST. amend. V (the Takings Clause).
[37] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984).
[38] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty. Fla.*, 605 F.2d 762, 780 (5th Cir. 1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).
[39] *Id.* (internal quotation marks and quotation omitted); *accord United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking contemporaneously paid in money."); 5th Cir. Pattern Civ. Jury Instruction 13.3 (2014) (internal quotation marks omitted) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both sides are fully informed about all the advantages and disadvantages of the property, and neither side is acting under any compulsion to buy or sell.").
[40] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty.*, 605 F.2d 762, 798 (5th Cir. 1979).
[41] *Id.* at 798 & n.64.
[42] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.*, 680 F.2d 388, 394 (5th Cir. 1982); *see United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").

use."[43] Where a condemnee[44] attempts to claim that the highest and best use for the property taken is something other than what the property is currently used for, the Fifth Circuit has held that the burden is on the condemnee to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that "there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[45] Where the taking is temporary, "the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period."[46] Market rental value is generally the appropriate measure of compensation for a temporary taking.[47] However, even if a taking is temporary, it may effect a complete deprivation of profitable use of property.[48]

"Considerations that may not reasonably be held to affect market value are excluded."[49] These considerations include special or sentimental value to the condemnee, the change in value of separate tracts that are affected by the taking,[50] appraisal and attorneys' fees, loss of profits, damage to goodwill, and the expense of relocation or other consequential losses.[51] "The burden of establishing the value of the land sought to be condemned [rests] with the landowner."[52]

b. Analysis

---

[43] *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).
[44] *See Condemnee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("One whose property is expropriated for public use or taken by a public-works project.").
[45] *320.0 Acres of Land*, 605 F.2d at 814; *accord United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par., La.*, 953 F.2d 886, 890 (5th Cir. 1992) ("Potential uses must overcome a presumption in favor of the existing use. A landowner can overcome this presumption only by showing a reasonable probability that the land is adaptable and needed for the potential use in the near future.").
[46] *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.*, 482 U.S. 304, 319 (1987).
[47] *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949).
[48] *See id.* at 14 (discussing that the condemnee's investment "remained bound up in the reversion of the property" so the United States "could no more completely have appropriated the [condemnee's] opportunity to profit" than by putting the condemnee completely out of business for a period of time).
[49] *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted).
[50] *See United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Par., La.*, 616 F.2d 762, 772 (5th Cir. 1980) (holding that a landowner is entitled only to recover for the actual condemnation and not for any theory of damages to remaining land or damages that will be incurred in the future).
[51] *Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 247–48 (3d Cir. 2019) (collecting United States Supreme Court cases).
[52] *United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par., La.*, 953 F.2d at 890 (5th Cir. 1992) (citing *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273–76 (1943)).

Defendant Mendoza points chiefly to her declaration to establish just compensation.[53] Defendant argues that she would not sell the easement at issue "to a willing buyer on the open market . . . for less than $2,500.00."[54] Defendant points to the same evidence of a potential leasing offer for her land, and the land's white-winged dove hunting prospect,[55] that this Court rejected with respect to Defendant's sister, Velma Flores, in *United States v. 30.00 Acres et al.*[56] Both parties acknowledge the similarity of this case to this Court's precedent.[57] Defendant argues that the easement at issue is "comparable to the access Ms. Mendoza planned to sell for hunting, as both would include nonexclusive annual access to her 30 acres of property for a range of temporary activities," though the United States' proposed easement goes even further in that it allows for trimming vegetation.[58] Because the United States seeks a 12-month easement over Defendant's entire 30 acres, Defendant argues that just compensation should be assessed for the encumbrance throughout the entire tract that would permit numerous individuals to access Defendant's property throughout one year, which Defendant declares she would not sell for less than $2,500.[59]

The United States argues that Defendant Mendoza has failed to proffer evidence of comparable sales or show that the temporary easement at issue impairs the value of the Subject Property.[60] The United States also argues that temporary easements have no market value that appreciably diminishes Defendant's land value.[61] The United States relies chiefly on a declaration of a licensed real estate appraiser who asserts that there is no measurable market

---

[53] Dkt. No. 27 at 4–6, ¶¶ 11–16.
[54] *Id.* at 4, ¶ 11 (citing Dkt. No. 27-1 at 4, ¶ 13).
[55] *See id.* at 5, ¶¶ 13–14.
[56] No. 7:19-cv-254, 2020 U.S. Dist. LEXIS 64148 (S.D. Tex. Apr. 13, 2020), Dkt. No. 35.
[57] *See* Dkt. No. 26 at 4, ¶ 7; Dkt. No. 27 at 6, ¶ 15 (citing Dkt. No. 27-2 (a transcript of the Court's hearing in that case)).
[58] Dkt. No. 27 at 5, ¶ 15.
[59] *Id.* at 6, ¶ 16 & 6–7, ¶ 18.
[60] Dkt. No. 26 at 4, ¶ 8.
[61] *Id.* at 5, ¶¶ 9–11.

value impact contemplated by the United States' temporary easement.[62] The United States also comments that, if Defendant suffers any unanticipated damages, she has multiple avenues to pursue recovery.[63]

The Court finds that Defendant has failed to carry her burden to achieve a different result than the Court reached less than two months ago.[64] As in that case, Defendant Mendoza "is not an appraiser and offers no documentary evidence or expert testimony in support of her contention that the property is worth $2,500.00."[65] Although Defendant points to a "late 2018 or early 2019" potential offer from a car dealership to lease the Subject Property for $5,000,[66] "it is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value."[67] Defendant does not point to any contrary authority to urge this Court to consider the unaccepted offer. Furthermore, despite Defendant's declaration that she cleared the land for hunting,[68] "she has not taken steps to lease the land for hunting."[69] Even if Defendant had attempted to secure a hunting lease, "there is no evidence on the record to definitively suggest that the United States' easement on the Subject Property precludes Ms. [Mendoza] from leasing the Subject Property for . . . hunting."[70] In short, in the absence of evidence of comparable sales, Defendant's expert's testimony of value, or any other evidence of the fair market value of a temporary 12-month easement over the Subject Property, the Court cannot find that Defendant has met her burden of establishing the value of the land as greater than the United States' estimated just compensation.

---

[62] *Id.* at 6–7, ¶¶ 11–14.
[63] *See id.* at 9–10, ¶¶ 17–18.
[64] *See United States v. 30.00 Acres of Land*, No. 7:19-cv-254, 2020 U.S. Dist. LEXIS 64148 (S.D. Tex. Apr. 13, 2020).
[65] *Id.* at *8.
[66] Dkt. No. 27-1 at 3, ¶¶ 10–12 (describing the unaccepted car dealership offer).
[67] *United States v. Smith*, 355 F.2d 807, 811 (5th Cir. 1966).
[68] Dkt. No. 27-1 at 3, ¶ 8.
[69] *30.00 Acres*, 2020 U.S. Dist. LEXIS 64148, at *9.
[70] *Id.*

The United States, for its part, cites a declaration under penalty of perjury[71] from Roger Jennings, "a licensed real estate appraiser and the Chief Supervisory Review Appraiser with the United States Army Corps of Engineers."[72] Mr. Jennings declares that he has significant appraisal experience, including in the Rio Grande Valley where the Subject Property is located, and that in his personal judgment and in the judgment of his associates and as reflected by appraisals completed by Mr. Jennings's associates, temporary rights of entry have no measurable market value especially where the easement "does not change the uses for which the property is legally available, has no impact on any potential physically possible use of the property, and does not impair the use or sale of the property for any of the available uses."[73] The United States relies on this declaration for its position that nominal compensation of $100 is just compensation, and is even more generous than $1 that would also be just compensation, for the easement at issue.[74]

The Court accepts Roger Jennings's declaration as expert evidence of the fair market value of the easement at issue.[75] In light of the adduced evidence, the Court finds that the United States' estimate of $100 is sufficient just compensation to compensate Defendant Mendoza for the easement over the Subject Property.

---

[71] *See* 28 U.S.C. § 1746.
[72] Dkt. No. 26 at 5, ¶ 10.
[73] Dkt. No. 26-2 at 1–5, ¶¶ 1–11.
[74] Dkt. No. 26 at 7–8, ¶¶ 15–16.
[75] *See* FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

## IV. HOLDING

For the foregoing reasons, the Court finds $100.00 to be just compensation for the easement granted in this case.[76] The Court **ORDERS** the parties to file dismissal documentation requesting the Court disperse the $100 deposited just compensation by **July 1, 2020**. Alternatively, the Court **ORDERS** the parties to appear for a status conference on **Tuesday, July 14, 2020 at 9:00 a.m.** and to file a status report in preparation for the conference by **July 6, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day of June 2020.

_____
Micaela Alvarez
United States District Judge

---

[76] *See* Dkt. No. 21.